EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EVARISTO ASENCIO, acusado y apelante.

Núm. 10696.—*Sometido:* Enero 10, 1945. *Resuelto:* Febrero 13, 1945.

*Enrique Báez García,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El apelante fué sentenciado a pagar una multa de $50 por infracción del artículo 10, inciso (*b*) sub-inciso (4) de la Ley núm. 72 de 26 de abril de 1940 (pág. 493), en relación con el Reglamento Núm. 2 del Comisionado de Sanidad de mayo 17 de 1932, consistiendo dicha infración en que "ilegal, voluntaria y maliciosamente, ofrecía en venta al pueblo para consumo humano, vinagre adulterado, que es un alimento." Se alega en la acusación que el vinagre que el acusado ofrecía en venta tenía 1.66 gm. × 100 c.c. de acidez en vez de 4 gm. × 100 c.c., que es el promedio de acidez que debería tener de acuerdo con el citado Reglamento.

En el primer señalamiento se alega que los actos realizados por el acusado no constituyen delito alguno dentro de las leyes de Puerto Rico; que la fabricación y venta del producto "imitación de vinagre" es una actividad lícita; y que el acusado tiene el derecho constitucional de dedicarse libremente a ese negocio.

No existe controversia alguna en cuanto a la prueba. El acusado tenía licencia para fabricar vinagre. En los bajos de su casa el inspector del Departamento de Sanidad encontró unas pipas llenas de vinagre y tomó de ellas tres muestras. Del análisis de dichas muestras resultó que el vinagre no tenía el grado de acidez requerido por el Reglamento. El acusado vendía el producto en botellas que llevaban una etiqueta que decía: "Imitación de Vinagre" y "coloreado con caramelo."

La Ley de Alimentos, Drogas y Cosméticos de Puerto Rico (Núm. 72, aprobada abril 26 de 1940, pág. 493), dispone en su artículo 2(*c*) que para los fines de esta ley "el término 'alimento' significará (1) artículos usados como alimento o

bebida por el hombre u otros animales, (2) goma de mascar, y (3) artículos usados como componentes de cualesquiera de dichos artículos." El artículo 3 prohíbe "(a) la fabricación, venta o entrega, tener u ofrecer en venta, alimento . . . . . alguno adulterado o fraudulentamente rotulado." El artículo 10 de la misma ley, de cuya infracción se acusó al apelante, dispone:

"Artículo 10.—Un alimento se considerará adulterado:

"(a)   .     .     .     .     . ,     .     .     ,

"(b) (1) Si cualquier componente valioso ha sido omitido o substraído total o parcialmente de la composición del mismo; . . . o (4) si cualquier substancia ha sido añadida o se ha mezclado o se ha empacado al mismo con el propósito de aumentar su volumen o peso, o reducir su calidad o potencia, o con el fin de hacerlo aparecer de mejor calidad o de mayor valor de lo que en realidad es."

El señor Luis Guillermety, químico del Departamento de Sanidad, quien hizo el análisis de las muestras, declaró: Que el vinagre tenía 1.66 gramos por 100 c.c. de acidez cuando debía tener 4 gramos por 100 c.c., que es una adulteración; que todos los vinagres, tanto los puros de verdad como los vinagres a base de ácido acético deben contener no menos del 4 por ciento de acidez, que es el *standard* legítimo requerido por el reglamento; que la "imitación de vinagre" también debe contener no menos del 4 por ciento de acidez, para llenar el standard; que el vinagre del acusado tenía solamente 1.66 por ciento y debe ser considerado como adulterado; que el reglamento dispone "que todos los vinagres diluídos o no e igualmente el ácido acético diluído deben contener no menos de 4 gramos de ácido acético por cada 100 c.c.," y que eso incluye a la llamada "imitación de vinagre."

No hubo error en la aplicación de la ley a los hechos del caso. El artículo que el acusado ofrecía en venta era un alimento, de acuerdo con la definición del estatuto. El acusado admitió en su declaración que él recibía vinagre en pipas de 55 galones, con un grado de acidez de $100 \times 100$, y

que lo diluía con agua, sin preocuparse de averiguar el standard de acidez que debería tener el vinagre para poder ser ofrecido legalmente en venta. La ignorancia de la ley no excusa su incumplimiento. Tampoco constituye defensa el hecho de que el alimento adulterado fuese vendido como "Imitación de Vinagre." La Ley de Alimentos, Drogas y Cosméticos se convertiría en letra muerta, si con el mero uso de la palabra "Imitación" se pudiese vender al público productos adulterados, tales como "imitación de leche," "imitación de magnesia," etc. Véase: *Pueblo* v. *Ramos,* 50 D.P.R. 77.

El apelante ha hecho grandes esfuerzos para tratar de convencernos, sin haberlo logrado, de que el uso de la etiqueta con las palabras "Imitación de Vinagre," es la mejor evidencia de que él no tuvo el propósito de engañar al consumidor, pues éste al comprar el producto sabía que no era vinagre lo que se le vendía.

Si algo se desprende claramente de la evidencia es el propósito fraudulento con que se usaba la frase "Imitación de Vinagre," impresa en las etiquetas que usaba el acusado. El propio acusado declaró: "Ese vinagre yo lo estuve vendiendo así un promedio de tres años. Yo recibía vinagre en pipas de 55 galones para diluirlo en agua, porque ése venía a cien grados." Esto demuestra claramente que lo que vendía el acusado no era un producto que por no ser vinagre pudiera llamarse "imitación de vinagre," y sí vinagre rebajado o diluído, mediante la adición de agua, desde 100 grados, hasta 1.66 gm. $\times$ 100 c.c., muy por debajo del standard de acidez de 4 gm. $\times$ 100 c.c. fijado por el reglamento.

Arguye el apelante que el Reglamento del Comisionado de Sanidad, de 17 de mayo de 1938 (sic), no está vigente, porque el mismo fué promulgado de acuerdo con la Ley núm. 63 de 28 de abril de 1931 (pág. 415), la cual fué derogada por la Ley núm. 149 de mayo 12 de 1939 (pág. 727), siendo

ésta a su vez derogada por la Ley núm. 72 de 26 de abril de 1940 (pág. 493), que es la que ahora rige en Puerto Rico.

Hemos examinado detenidamente las tres leyes citadas. En todas ellas se define en idénticos términos lo que se entiende por "alimento" y cuándo se deberá considerar un alimento como "adulterado." En cada una de dichas leyes se faculta al Comisionado de Sanidad para promulgar los reglamentos que fueren necesarios para poner· en vigor la ley. Y esos reglamentos, una vez promulgados, tienen fuerza de ley y deben ser respetados hasta que sean expresa o tácitamente derogados por otros reglamentos o leyes posteriores. Ni en la ley de 1939 ni en la de 1940 hemos encontrado disposición alguna por la cual se deroguen expresamente los reglamentos anteriormente promulgados. Por las cláusulas derogatorias en cada una de dichas leyes solamente "se deroga toda ley o parte de ley que se oponga a la presente." El Reglamento de 1932, lejos de oponerse a las citadas leyes, es absolutamente necesario para su efectividad. Prueba de ello es que el reglamento aprobado en junio 18 de 1942 dispone expresamente que el reglamento núm. 2 de mayo 17 de 1932, sobre vinagres, forma parte del nuevo reglamento. Véase: *Pueblo* v. *Ortiz,* 62 D.P.R. 298.

El tercer señalamiento carece de méritos. La acusación contiene datos suficientes para informar al acusado en cuanto a la naturaleza del delito que se le imputa. *Pueblo* v. *Morales,* 61 D.P.R. 200.

*La sentencia recurrida debe ser confirmada.*